UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN S.,<br><br>                                    Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of<br>Social Security,[1]<br><br>                                    Defendant. | Case No.:  3:19-cv-00651-JLS-RNB<br><br>**REPORT AND<br>RECOMMENDATION REGARDING<br>CROSS-MOTIONS FOR SUMMARY<br>JUDGMENT**<br><br>**(ECF Nos.  12, 13)** |

        This Report and Recommendation is submitted to the Honorable Janis L. Sammartino, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

        On April 8, 2019, plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits.  (*See* ECF No. 1.) Now pending before the Court and ready for decision are the parties' cross-motions for

_____

[1]        Andrew Saul is hereby substituted as the defendant in this case per Fed. R. Civ. P. 25(d).

summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED,** that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

On May 28, 2013, plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability commencing March 2, 2012. (Certified Administrative Record ["AR"]) 332-34.) Her application was denied initially and upon reconsideration. (AR 177-81, 187-91.)

On February 14, 2014, plaintiff requested a hearing before an administrative law judge ("ALJ"). (AR 193-94.) The hearing was held on April 19, 2016. Plaintiff appeared with counsel, and testimony was taken from her and a vocational expert ("VE"). (*See* AR 78-95.) The ALJ issued a decision on July 19, 2016, finding that plaintiff was not disabled for purposes of her benefits application. (AR 159-68.) Thereafter, plaintiff requested a review of the decision by the Appeals Council. (AR 243.) On October 21, 2016, the Appeals Council granted review, vacated the ALJ's decision, and remanded for further proceedings. (AR 174-75.)

Pursuant to the order of remand, another administrative hearing was held by a different ALJ on November 14, 2017. Plaintiff appeared with different counsel, and testimony was taken from a medical expert ("ME") telephonically, as well as from plaintiff and a different VE. (*See* AR 41-77.) The ALJ issued a decision on May 4, 2018, finding that plaintiff was not disabled for purposes of her benefits application. (AR 16-28.) Thereafter, on May 29, 2018, plaintiff through counsel requested a review of the decision by the Appeals Council. (AR 329-31.) Plaintiff's counsel submitted a single-page letter brief on June 13, 2018 (AR 487) and submitted additional medical evidence on August 6, 2018 (AR 97-133). The ALJ's decision became the final decision of the Commissioner on

February 13, 2019, when the Appeals Council denied plaintiff's request for review.  (AR 1-6.)  This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ initially determined that plaintiff last met the insured status requirements of the Social Security Act on June 30, 2014.  (AR 19.)  The ALJ proceeded to follow the Commissioner's five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.[2]

At step one, the ALJ found that plaintiff had engaged in substantial gainful activity in 2014.  However, the ALJ found that there had been a continuous 12-month period during which plaintiff did not engage in substantial gainful activity.  (AR 19.)

At step two, the ALJ found that plaintiff had the following severe impairments through the date last insured: chronic obstructive pulmonary disease ("COPD"), hearing loss, residuals of a fractured right foot with cysts, hypertension, a cyst on her liver, and obesity.  (AR 20.)  As part of his step two determination, the ALJ further found that plaintiff's medically determinable impairments of hypothyroidism, hyperlipidemia, and Bell's palsy were nonsevere.  (*Id.*)  Likewise, the ALJ found that plaintiff's medically determinable mental impairments of depression with anxiety were nonsevere.  (*See* AR 20-22.)

At step three, the ALJ found that, through the date last insured, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (AR 23.)

Next, the ALJ determined that, through the date last insured, plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), "except that she can stand, walk, or sit for six hours in an eight-hour workday;

[2]    Unless otherwise indicated, all references herein to the Commissioner's regulations are to the regulations in effect at the time of the ALJ's decision.

can do frequent climbing stairs, stooping, kneeling, crouching, and crawling; and must avoid concentrated exposure to pulmonary irritants or extreme temperatures." (AR 24.)

For purposes of his step four determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with plaintiff's vocational profile and RFC would be able to perform the requirements of plaintiff's past relevant work as a waitress (as actually or generally performed). (AR 27-28.)

Accordingly, the ALJ concluded that plaintiff was not disabled through June 30, 2014, the date last insured. (AR 28.)

## PLAINTIFF'S CLAIMS OF ERROR

1. The Appeals Council was required to grant plaintiff's request for review pursuant to Social Security Ruling ("SSR") 19-1p. (*See* ECF No. 12-1 at 9-10.)

2. The ALJ was not properly appointed under the Constitution and therefore lacked legal authority to hear and decide plaintiff's case. (*See* ECF No. 12-1 at 10-16.)

3. The ALJ violated Agency policy by having the medical expert testify at the beginning of the administrative hearing. (*See* ECF No. 12-1 at 16-17.)

4. The ALJ erred (a) in finding that plaintiff's mental impairments were nonsevere and (b) in not including mental limitations he found credible in his RFC determination or hypothetical to the VE. (*See* ECF No. 12-1 at 17-21.)

5. The ALJ erred in his RFC determination by failing to adopt functional limitations related to plaintiff's right arm lymphedema, hearing loss, and obesity. (*See* ECF No. 12-1 at 21-24.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a

preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

# DISCUSSION

**A.    Plaintiff's first and second claims of error fail because she did not timely raise the Appointments Clause issue during the administrative proceedings.**

Plaintiff's first claim of error is premised on SSR 19-1p, which was promulgated in light of the Supreme Court's decision in *Lucia v. Securities and Exchange Commission*, 138 S. Ct. 2044 (2018) and which provides in pertinent part:

> The Appeals Council will grant the claimant's request for review in cases where the claimant: (1) Timely requests Appeals Council review of an ALJ's decision or dismissal issued before July 16, 2018; and (2) raises before us (either at the Appeals Council level, or previously had raised at the ALJ level) a challenge under the Appointments Clause to the authority of the ALJ who issued the decision or dismissal in the case.

Here, the ALJ's decision was issued before July 16, 2018 (i.e., on May 4, 2018) and plaintiff did timely request review of that decision on May 29, 2018. However, the first time plaintiff raised a challenge under the Appointments Clause to the authority of the ALJ was on February 26, 2019, nearly two weeks **after** the Appeals Council had issued its final decision declining further review. (*See* AR 39-40.) The Court concurs with the Commissioner that, by then, the window for raising any such challenge and triggering the application of SSR 19-1p was closed. Indeed, the Court deems plaintiff's failure to reply to the Commissioner's contention regarding the inapplicability of SSR 19-1p as a

concession to the correctness of the Commissioner's position on plaintiff's first claim of error.

Plaintiff's second claim of error is a straight Appointments Clause claim premised on the Supreme Court's decision in *Lucia*. There, the Supreme Court held that ALJs of the Securities and Exchange Commission ("SEC") are "Officers of the United States," and therefore subject to the Appointments Clause of the Constitution. *Lucia*, 138 S. Ct. at 2055. The Court stated that "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Id.* (quoting *Ryder v. United States*, 515 U.S. 177, 182-83 (1995)). The Supreme Court reasoned that Lucia was entitled to a new hearing before a different constitutionally-appointed SEC ALJ because he had made a "timely challenge to the constitutional validity of the appointment of [the] officer who adjudicate[d] his case." *Id.* The Court determined that Lucia's challenge was timely because he had "contested the validity of [the ALJ's] appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court." *Id.*

The consensus of the Circuit Courts, including the Ninth Circuit, is that Appointments Clause challenges are nonjurisdictional and may be waived or forfeited if not timely asserted during the administrative proceedings. *See, e.g.*, *Turner Bros., Inc. v. Conley*, 757 F. App'x 697, 700 (10th Cir. 2018); *Kabani & Co., Inc. v. SEC*, 733 F. App'x 918, 919 (9th Cir. 2018); *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 678 (6th Cir. 2018); *N.L.R.B. v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013); *see also Intercollegiate Broad. Sys. v. Copyright Royalty Bd.*, 574 F.3d 748, 755-56 (D.C. Cir. 2009) (declining to address Appointments Clause challenge to the Copyright Royalty Board members raised in supplemental briefing because it was "untimely").

Notwithstanding the foregoing authority, plaintiff disputes that her failure to timely raise the Appointments Clause issue at the Appeals Council level results in forfeiture of that issue. Plaintiff bases this position on the Supreme Court's holding regarding issue exhaustion in *Sims v. Apfel*, 530 U.S. 130 (2000). (*See* ECF No. 12-1 at 12-14.)

6

In *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999), a decision pre-dating *Sims*, the Ninth Circuit held that a claimant "must raise all issues and evidence **at their administrative hearings** in order to preserve them on appeal." *Id.* at 1115 (emphasis added). In *Sims*, the Supreme Court held that claimants need not "exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Sims*, 530 U.S. at 111. However, earlier in the decision, the Supreme Court explicitly noted that "[w]hether a claimant must exhaust issues before the ALJ is not before us." *See id.* at 107. In *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017), a case decided after *Sims*, the Ninth Circuit stated that "[i]n light of the Court's express limitation on its holding in *Sims*, we cannot say that that holding is 'clearly irreconcilable' with our decision in *Meanel*, and ***Meanel* therefore remains binding on this court with respect to proceedings before an ALJ**." *Id.* at 1109 (emphasis added).

Here, plaintiff did not raise her Appointments Clause objection/challenge in front of the ALJ and, as discussed above, she did not timely raise the issue before the Appeals Council. The Court therefore will follow the reasoning of other district courts in this Circuit which have rejected Appointments Clause claims post *Sims* when the challenge was not timely made at the administrative level. *See, e.g., Samuels v. Comm'r of Soc. Sec.*, 2019 WL 4479534, at *5 (N.D. Cal. Sept. 18, 2019); *Camilli v. Berryhill*, 2019 WL 3412921, at *13 (N.D. Cal. July 29, 2019); *Morrow v. Berryhill*, 2019 WL 2009303, at *3-*4 (N.D. Cal. May 7, 2019); *Allen v. Berryhill*, 2019 WL 1438845, at *13 (N.D. Cal. Mar. 31, 2019); *Delores A v. Berryhill*, 2019 WL 1330314, at *10 (C.D. Cal. Mar. 25, 2019); *Dierker v. Berryhill*, 2019 WL 246429, at *3-*4 (S.D. Cal. Jan. 16, 2019), *Report and Recommendation adopted by* 2019 WL 446231 (S.D. Cal. Feb. 5, 2019); *Hugues v. Berryhill*, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018).

//
//
//

**B.     Reversal is not warranted based on the ALJ's finding that plaintiff's mental impairments were nonsevere.**

As part of her fourth claim of error, plaintiff is challenging the ALJ's finding at step two of the sequential evaluation process that plaintiff's depression and anxiety were nonsevere.[3]

Step two of the Commissioner's sequential evaluation process requires the ALJ to determine the medical severity of the claimant's medically determinable impairments.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).  The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe."  Under the Commissioner's regulations, an impairment is not severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  *See* 20 C.F.R. § 404.1522(a).  SSR 85-28 clarified that this means "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities."  *See also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  Basic work activities are "the abilities and aptitudes necessary to do most jobs," including mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  *See* 20 C.F.R. § 404.1522(b); *see also* SSR 85-28.

The Ninth Circuit has described step two as "a de minimis screening device to dispose of groundless claims."  *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Webb*, 433 F.3d at 687.

The fallacy of plaintiff's claim that the ALJ erred in his nonseverity finding is that plaintiff is not focusing on the actual basis for the ALJ's finding.   Under the

---

[3]     In her fourth claim of error, plaintiff also contends that the ALJ erred in not including mental limitations he found credible in his RFC determination or hypothetical to the VE. The Court will address this separate contention in Section D below.

Commissioner's regulations, to determine whether a claimant has a severe *mental* impairment at step two, an ALJ must follow a "special technique." *See* 20 C.F.R. § 404.1520a(a).[4] This entails the following steps: determining whether the claimant has any medically determinable mental impairments; rating the degree of functional limitation resulting from the mental impairment(s) in four broad functional areas; determining the severity of the mental impairment(s); and then, if any of the mental impairments is severe, proceeding to step three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520a(b)-(d).

The four broad functional areas are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *See* 20 C.F.R. § 404.1520a(c)(3). In rating the degree of limitation in these areas, the following five-point scale is utilized: None, mild, moderate, marked, and extreme. *See* 20 C.F.R. § 404.1520a(c)(4). Under the Commissioner's regulations, if the degrees of limitation are rated as "none" or "mild," the impairment generally is considered not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *See* 20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ's decision reflects that he followed the "special technique." He acknowledged that plaintiff had been diagnosed with major depressive disorder and been treated with medications, including medications for anxiety. (*See* AR 20.) The ALJ then proceeded to rate the degree of functional limitation resulting from plaintiff's mental impairments in the four broad functional areas.

---

[4] The Court notes that the Social Security Agency revised the medical criteria used to evaluate claims involving mental disorders in a revised version of 20 C.F.R. § 404.1520a effective January 17, 2017. The revised version applies to ALJ decisions issued after that date. *See* 81 Fed. Reg. 66138-01, at 66138 n.1 (Sept. 26, 2016). Since the ALJ decision here was issued on May 4, 2018, all references herein to 20 C.F.R. § 404.1520a will refer to the revised version.

3:19-cv-00651-JLS-RNB

With respect to the first broad functional area (*i.e.*, understanding, remembering or applying information), the ALJ found that plaintiff had no limitations.  In support of this finding, the ALJ noted that the record did not include any evidence of an intellectual disability and that plaintiff had completed high school, obtained a cosmetology license, and owned her own business.  Additionally, the ALJ noted that, on mental status examination, plaintiff's thought process, insight, judgment, and memory had been intact. (AR 21.)

With respect to the second broad functional area (*i.e.*, interacting with others), the ALJ found that plaintiff had mild limitations.  In support of this finding, the ALJ noted that, on mental status examination, plaintiff had retained a normal eye contact, and had been cooperative, demonstrating ability to relate to others.  The ALJ also noted that the record included no clinical findings that would demonstrate any difficulties getting along with others.  However, in a functional report to social security, plaintiff had reported isolating herself, doing no social activities, and not getting along with family.  The ALJ reconciled the clinical findings with plaintiff's report by finding mild limitations in this area of functioning.  (AR 21-22.)

With respect to the third broad functional area (*i.e.*, concentrating, persisting, or maintaining pace), the ALJ found that plaintiff had mild limitations.  In support of this finding, the ALJ noted that plaintiff had reported being able to pay attention for a couple of hours, feeling overwhelmed, and not being able to perform tasks like she used to.  However, on mental status examination, she had been noted as having no difficulties with concentrating or focus and the record did not include any other clinical findings showing difficulty in completing tasks.  Plaintiff also had reported watching television daily.  The ALJ reconciled plaintiff's allegations with the clinical evidence by finding mild limitations in this area of functioning.  (AR 22.)

With respect to the fourth broad functional area (*i.e.*, adapting or managing oneself), the ALJ found that plaintiff had mild limitations.  In support of this finding, the ALJ noted that he considered a claimant's ability to regulate emotions, control behavior, and maintain

well-being in work settings in this area of functioning. He noted that evidence indicated that plaintiff had presented as well groomed at appointments, demonstrating ability to maintain personal hygiene and attire appropriate to a work setting. Plaintiff also had reported independently doing her laundry, preparing her meals, shopping, and watering outdoor plants. However, because she had reported anxiety with panic attacks and had had a suicidal incident, the ALJ found mild limitations in this area of functioning. (AR 22.)

Because they caused no more than "mild" limitations in the four broad functional areas, the ALJ found that plaintiff's medically determinable mental impairments were nonsevere. (*See* AR 22.)

Nowhere in the section of plaintiff's summary judgment motion challenging this nonseverity finding does plaintiff address the ALJ's findings with respect to the four broad functional areas or the ALJ's reasoning in support of those findings. (*See* ECF No. 12-1 at 17-20.) The Court finds that the ALJ's findings with respect to the four broad functional areas are based on a rational interpretation of the evidence. The Court further finds that this is not an instance where the medical evidence otherwise indicates that there is more than a minimal limitation in plaintiff's ability to do basic mental work activities. While plaintiff was prescribed a medication for anxiety, multiple examinations by plaintiff's treating medical providers during the period subsequent to the alleged onset date reflect normal psychiatric findings. Indeed, plaintiff more than once denied experiencing any psychiatric symptoms. (*See, e.g.*, AR 516, 720, 745, 801, 803, 812, 816, 925.) Accordingly, the Court has no basis for finding that the ALJ erred in finding that plaintiff's medically determinable mental impairments were nonsevere.

## C.  Reversal is not warranted based on the ALJ having the ME testify at the beginning of the administrative hearing.

Plaintiff's third claim of error is that the ALJ violated Agency policy by having the ME testify at the beginning of the administrative hearing, before plaintiff testified. This claim is based on the Social Security Agency's internal policy manual, the Hearings,

Appeals, and Litigation Manual ("HALLEX"), and specifically § I-2-6-70(b) which provides in pertinent part:

> The ME may attend the entire hearing, but this is not required. If the ME was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record. If additional medical evidence is received at the hearing, the ALJ will provide it to the ME for review before the ME testifies.

In his cross-motion, the Commissioner does not dispute that the ME's testimony at the administrative hearing preceded plaintiff's testimony and thus the ME was unaware of plaintiff's testimony when he rendered his opinions. Rather, the Commissioner contends that reversal is not warranted based on this alleged error because the Ninth Circuit has held that HALLEX does not give rise to any legally enforceable rights. (*See* ECF No. 13-1 at 17, citing *Roberts v. Comm'r of Soc. Sec. Admin.*, 644 F.3d 931, 933 (9th Cir. 2011) and *Lockwood v. Comm'r Soc. Sec.*, 616 F.3d 1068, 1072 (9th Cir. 2010).)

Plaintiff maintains in her reply brief that the Commissioner's reliance on *Roberts* and *Lockwood* is misplaced because those decisions pre-date the promulgation of SSR 13-2p in 2013. According to plaintiff, SSR 13-2p made the HALLEX binding on ALJs as a matter of explicit agency policy. (*See* ECF No. 14 at 7-8.)

The Court notes that, even after the promulgation of SSR 13-2p on February 20, 2013, the Ninth Circuit has continued to cite *Roberts* and *Lockwood* for the proposition that the Agency's internal policy manuals such as HALLEX do not give rise to any legally enforceable rights. *See, e.g.*, *Wilson v. Berryhill*, 732 F. App'x 504, 507 (9th Cir. 2018); *Withrow v. Colvin*, 672 F. App'x 748, 749 (9th Cir. 2017); *Whitten v. Colvin*, 642 F. App'x 710, 713 (9th Cir. 2016); *Durden v. Colvin*, 546 F. App'x 690, 690-91 (9th Cir. 2013). Moreover, the contention that SSR 13-2p overrides the holdings of *Roberts* and *Lockwood* has been rejected by other district courts in this Circuit, including another court in this district. *See Elias v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4296779, at *3 (D. Ariz. Sept. 11, 2019); *Hanh L. v. Comm'r, Soc. Sec. Admin.*, 2019 WL 5858187, at *5 (D. Or. July 23,

2019), *Report and Recommendation Adopted by* 2019 WL 5858182 (D. Or. Sept. 3, 2019); *Hollen v. Comm'r of Soc. Sec.*, 2017 WL 1075194, at *8-*9 (S.D. Cal. Mar. 22, 2017); *Martinez v. Colvin*, 2016 WL 270911, at *5 (D. Or. Jan. 20, 2016).

Indeed, in *Hollen*, 2017 WL 1075194, at *8-*9, the Southern District of California case, the plaintiff likewise was arguing that the ALJ had erred by failing to follow a HALLEX procedure for procuring testimony from a medical expert and that *Lockwood* no longer was binding as it was decided prior to SSR 13-2p. In rejecting the plaintiff's position, the district judge reasoned as follows:

> "HALLEX does not impose judicially enforceable duties on either the ALJ or this court." *Lockwood*, 616 F.3d at 1072. No authority has ever found the Ninth Circuit's position on HALLEX was overturned, and Plaintiff's assertion that SSR 13-2P mandates that ALJs follow HALLEX procedures is erroneous.
>
> "Social Security Rulings 'represent ... statements of policy and interpretations ... [but] do not carry the 'force of law.'" *Bray*, 554 F.3d at 1224. Rather, they are only binding as far as the interpretation is applicable to the facts underlying an ALJ's decision. *Id.*
>
> Despite Plaintiff's arguments to the contrary, SSR 13-2P carries no substantive policy interpretations applicable to the facts of her case. Rather, SSR 13-2P is a policy ruling clarifying how the Agency determines 'whether drug addiction is a contributing factor material to the determination of disability.' 78 Fed. Reg. 11939, 11941 (Mar. 22, 2013). As Plaintiff does not claim the ALJ improperly applied the Plaintiff's drug or alcohol dependence in his disability determination, SSR 13-2p is not binding. *See Martinez v. Colvin*, Case No. 14cv1703-MC, 2016 WL 1054497, at *5 (D. Or. Jan. 20, 2016) ("Plaintiff made no claims that there were misinterpretations of policies relating to drug addiction and alcoholism in this case. Therefore, SSR 13-2P is inapplicable here and does not change this Court's application of *Lockwood*.").
>
> Accordingly, as SSR 13-2P does not mandate the ALJ follow HALLEX procedures, the ALJ did not err by refusing to summarize Plaintiff's subjective testimony for the ME.

The Court concurs with the foregoing reasoning. Accordingly, the Court finds that reversal is not warranted based on the ALJ's alleged error in having the ME testify at the beginning of the administrative hearing, before plaintiff testified.

**D.** **The Court is unable to affirm the ALJ's RFC determination because (a) the ALJ failed to properly consider the limiting effects of plaintiff's mental impairments in his determination of plaintiff's RFC; (b) the ALJ failed to consider whether plaintiff had any physical functional limitations as a result of her right arm lymphedema based on his erroneous finding that plaintiff's right arm lymphedema was not a medically determinable impairment; (c) the ALJ should have developed the record further with respect to plaintiff's obesity; and (d) the ALJ should have developed the record further with respect to plaintiff's hearing loss.**

For the following four reasons, the Court is unable to affirm the ALJ's RFC determination. It follows that the Court also is unable to affirm the ALJ's vocational determination at step four of the sequential evaluation process.

    1.   The ALJ failed to properly consider the limiting effects of plaintiff's mental impairments in his determination of plaintiff's RFC.

As part of her fourth claim of error, plaintiff contends that the ALJ erred in not including the mild mental limitations he found credible at step two of the sequential evaluation process in his RFC determination or his hypothetical questions to the VE. (*See* ECF No. 12-1 at 20-21.)

In assessing a claimant's RFC, an ALJ must consider the limiting effect of all impairments, including those that are nonsevere. *See* 20 C.F.R. § 404.1545(a)(2). In *Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012), the ALJ determined at step two that the claimant's PTSD caused mild limitations in concentration, persistence or pace, but was nonsevere. *Hutton*, 491 F. App'x at 850. The ALJ later explicitly excluded consideration of the claimant's PTSD in making his determination of the claimant's RFC because he found that the claimant lacked credibility. In holding that the ALJ had erred, the Ninth Circuit reasoned: "[W]hile the ALJ was free to reject Hutton's testimony as not credible, there was no reason for the ALJ to disregard his own finding that Hutton's nonsevere PTSD

caused some "mild" limitations in the areas of concentration, persistence, or pace." *Hutton*, 491 F. App'x at 851.

Numerous courts in this Circuit have followed *Hutton* and found reversible error where the ALJ failed to include mild mental limitations in the assessment of the claimant's RFC. *See, e.g., Carlson v. Berryhill*, 2019 WL 1116241, at *17-*18 (N.D. Cal. Mar. 10, 2019); *Barrera v. Berryhill*, 2018 WL 4216693, at *4-*5 (C.D. Cal. Sept. 5, 2018); *Gates v. Berryhill*, 2017 WL 2174401, at *2 (C.D. Cal. May 16, 2017); *Smith v. Colvin*, 2015 WL 9023486, at *8-*9 (N.D. Cal. Dec. 16, 2015); *Kramer v. Astrue*, 2013 WL 256790, at *2-3 (C.D. Cal. Jan. 22, 2013). Other courts have found *Hutton* to be inapplicable where the record demonstrates that the ALJ did consider a claimant's nonsevere mental impairments before concluding that they did not cause any significant limitation necessitating inclusion in the RFC. *See, e.g., Thompson v. Saul*, 2019 WL 3302471, at *7 (E.D. Cal. July 23, 2019); *George A. v. Berryhill*, 2019 WL 1875523, at *3-*5 (C.D. Cal. Apr. 24, 2019); *Lindsay v. Berryhill*, 2018 WL 3487167, at *6 (C.D. Cal. July 18, 2018); *Aranda v. Berryhill*, 2017 WL 3399999, at *5-*6 (C.D. Cal. Aug. 8, 2017).

In the Court's view, this case falls squarely under *Hutton*. The ALJ here found mild limitations in three of the four broad functional areas: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Based on these findings and his finding of no limitation in the other broad functional area, the ALJ determined that plaintiff's medically determinable mental impairments were nonsevere. However, the ALJ acknowledged that the mental RFC assessment used at steps four and five of the sequential evaluation process "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings." (S*ee* AR 22, citing SSR 96-8p.) Notwithstanding this acknowledgement, the ALJ discussed plaintiff's mental impairments only in connection with Finding No. 4 (severity) of his decision. (*See* AR 20-23.) The decision does not contain any discussion or reflect any reasoned consideration of the mild limitations caused by plaintiff's mental impairments in connection with Finding No. 6 (RFC). (*See* AR 24-

27.) Nor does the decision contain any discussion or reflect any reasoned consideration of the mild limitations caused by plaintiff's mental impairments in connection with Finding No. 7 (past relevant work). (*See* AR 27-28.) The ALJ's boilerplate assertion in connection with Finding No. 4 that his RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis" was not sufficient. *See Delia v. Saul, 2019 WL 4601834, at *8 (D. Idaho Sept. 23, 2019); Gates*, 2017 WL 2174401, at *3 (rejecting the Commissioner's argument that one can "infer" that the ALJ considered plaintiff's mild mental limitations as inconsistent with *Hutton*); *cf. Curtis v. Comm'r of Soc. Sec.*, 584 F. App'x 390, 391 (9th Cir. 2014) ("Although the ALJ wrote that he considered '[a]ll impairments, severe and non-severe,' in determining [the claimant's] residual functional capacity (RFC), we are unable to determine on the record before us whether the ALJ adequately considered [the claimant's] mental health limitations.").

Thus, the ALJ plainly erred. Moreover, the Court is unable to find that the error was "inconsequential to the ultimate nondisability determination" and therefore harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The Court cannot determine what the result would have been if the ALJ had properly considered plaintiff's mild mental limitations when assessing her RFC. Since the ALJ did not include in any of his hypotheticals to the VE any functional limitations relating to plaintiff's mild mental limitations (*see* AR 72-75), the Court also cannot determine how the VE would have testified had any such limitations been included in the hypotheticals posed.

> 2. The ALJ failed to consider whether plaintiff had any physical functional limitations as a result of her right arm lymphedema based on his erroneous finding that plaintiff's right arm lymphedema was not a medically determinable impairment.

In connection with Finding No. 4 (severity) of his decision, the ALJ acknowledged that plaintiff had complained of lymphedema. However, the ALJ stated that he did not

3:19-cv-00651-JLS-RNB

consider lymphedema in his RFC determination because it was not a medically determinable impairment. (*See* AR 23.)

As part of her fifth claim of error, plaintiff contends that the ALJ erred in finding that plaintiff's right arm lymphedema was not a medically determinable impairment and in failing to adopt any functional limitations related to this impairment. (*See* ECF No. 12-1 at 21-22.) The Court concurs that the ALJ erred in finding that plaintiff's right arm lymphedema was not a medically determinable impairment. Plaintiff's treatment notes reflect a finding on physical examination of "mild lymphedema in her right arm." (*See* AR 502.)

Thus, the question becomes whether the ALJ's error was harmless. As noted above, under the Commissioner's regulations, an ALJ must consider the limiting effect of all impairments in assessing a claimant's RFC, including those that the ALJ assessed as nonsevere. Here, plaintiff testified at the administrative hearing about functional limitations caused by her lymphedema, such as difficulty gripping things and the inability to carry anything with her right arm. (*See* AR 61-63, 67-68.) However, the ALJ's decision does not contain any discussion or reflect any reasoned consideration of that testimony or of plaintiff's right arm lymphedema in connection with his RFC determination and the ALJ's RFC determination did not include any functional imitations relating to plaintiff's use of her right arm. (*See* AR 24-27.) While the ALJ's third hypothetical to the VE did include functional limitations due to plaintiff's lymphedema in her right dominant hand (*see* AR 74), those limitations did not completely comport with the functional limitations caused by her lymphedema about which plaintiff had testified. Accordingly, the Court is unable to find that this error by the ALJ was harmless.

3. <u>The ALJ should have developed the record further with respect to plaintiff's obesity.</u>

As part of her fifth claim of error, plaintiff also contends that, in light of his step two finding that plaintiff's obesity constituted a severe impairment and the ME's

acknowledgment at the administrative hearing that plaintiff would have postural limitations because of her obesity (*see* AR 50), the ALJ erred when he failed to adopt any postural limitations relating to plaintiff's obesity. (*See* ECF No. 12-1 at 23-24.) In response, the Commissioner disputes that the ALJ failed to account for plaintiff's obesity in his RFC determination. The Commissioner notes in this regard that the ALJ assessed a restrictive RFC that "limited [p]laintiff's walking standing, sitting, postural, and environmental capacities"; and that, contrary to plaintiff's contention, the ALJ's RFC determination did include specific postural limitations. The ALJ limited plaintiff to only "frequent" climbing of stairs, kneeling, crouching, and crawling. This meant that plaintiff could perform these postural activities no more than one to two-thirds of the workday. (*See* ECF No. 13-1 at 23-24, citing SSR 83-10 for the definition of "frequent.")

In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the claimant's interests are considered, and this special duty exists even when the claimant is represented by counsel. *See, e.g., Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014); *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001); *Smolen,* 80 F.3d at 1288*; Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir.1983). "The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)). Moreover, "[a] specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy.") *McLeod*, 640 F.3d at 885.

Here, at step two of the sequential evaluation process, the ALJ found, based on the medical evidence of record, that one of plaintiff's severe impairments was her obesity. As discussed above, under the Commissioner's regulations, an impairment is severe only if it **significantly** limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 405.1522(a) (emphasis added). Basic work activities include "[p]hysical

functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." *See* 20 C.F.R. § 404.1522(b).

The medical evidence before the ALJ did not include an opinion from any treating or examining physician regarding plaintiff's work-related limitations due to her obesity. While the ME acknowledged at the administrative hearing that plaintiff would have postural limitations because of her obesity, he did not specify what those postural limitations would be and the ALJ did not follow up with any examination of him regarding that issue. (*See* AR 50.) The Court finds that the ALJ's failure to either follow up with plaintiff's treating doctors or the ME regarding plaintiff's work-related limitations due to her obesity (or order a consultative examination that would have encompassed that issue) (a) constituted a violation of the ALJ's special duty to fully and fairly develop the record, and (b) resulted in a decision that was not supported by substantial evidence. *See, e.g.*, *Molina v. Berryhill*, 2018 WL 6421287, at *4 (E.D. Cal. Dec. 6, 2018) (holding that ALJ's RFC determination was not supported by substantial evidence when ALJ made her own evaluation of the functional limitations caused by the claimant's diagnosed impairments without further developing the record through a consultative examination); *de Lopez v. Astrue*, 643 F. Supp. 2d 1178, 1184 (C.D. Cal. 2009) (holding that ALJ failed in his duty to fully and fairly develop the record where the administrative record did not contain any opinion by a treating or examining physician regarding the claimant's RFC); *Mendoza v. Barnhart*, 436 F. Supp. 2d 1110, 1116 (C.D. Cal. 2006) (same); *see also Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("[T]he ALJ's RFC determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician."). Absent medical opinion evidence, the ALJ was not qualified to make the determination he made. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (recognizing that an ALJ is "not qualified as a medical expert").

//

//

4. <u>The ALJ should have developed the record further with respect to plaintiff's hearing loss.</u>

As part of her fifth claim of error, plaintiff also contends that, in light of his step two finding that plaintiff's hearing loss constituted a severe impairment, the ALJ erred in failing to adopt any functional limitations relating to that impairment. Plaintiff maintains that the ALJ should not have relied upon the testimony of the ME, who acknowledged that he could not interpret the audiograms of record. (*See* ECF No. 12-1 at 22-23, citing AR 51.) Plaintiff also contends that the ALJ erred by failing to consider the following statement by the Social Security interviewer in her May 28, 2013 Field Office Report (AR 388): "I could tell she had a hearing impairment because she asked me to repeat myself a few times and she was concentrating on my lips to help her understand what I was saying." According to plaintiff, the ALJ's failure to even mention the observations of the Social Security employee violated his duty under SSR 16-3p to "consider any statements in the record noted by agency personnel who previously interviewed the individual." (*See* ECF No. 12-1 at 23.)

In response, the Commissioner contends that plaintiff's argument that the ALJ's severity finding compelled limitations in plaintiff's RFC is incorrect under the regulations and Ninth Circuit precedent. (*See* ECF No. 13-1 at 22-23, citing *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) and *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009).) Further, according to the Commissioner, "the ALJ explained that while [p]laintiff reported some difficulty in understanding, her hearing loss was noted to be 'mild' at her most recent examination, she testified that her hearing aids worked well, mental-status examinations revealed she had no difficulties in understanding or speaking, and the record evidenced limited treatment for hearing, with no further treatment recommended by her medical providers." (ECF No. 13-1 at 23.) Finally, the Commissioner contends that the ALJ's duty under SSR 16-3p to consider statements by agency employees did not mean that the ALJ had a duty to explicitly discuss such evidence. (*See id.*)

The Court will address first the issue of whether reversal is warranted based on the ALJ's alleged violation of his duty under SSR 16-3p. "The ALJ's general obligation under SSR 16-3p to consider statements of agency personnel who interviewed the claimant does not impose a duty to discuss every such statement on the records no matter the probative value." *Ferdows v. Berryhill*, 2018 WL 7501295, at *2 (C.D. Cal. Oct. 10, 2018) *(*citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). Rather, the ALJ need only explain why "significant probative evidence has been rejected." *See Vincent,* 739 F.2d at 1395. In the Court's view, the interviewer's statement and observation were probative of whether, during the period relevant to her benefits application (*i.e.*, March 2, 2012 through June 30, 2014), plaintiff's medically determinable impairment of hearing loss constituted a severe impairment. And, the ALJ did so find. However, in the Court's view, the interviewer's statement and observation were not probative of whether, when wearing her hearing aids, plaintiff's hearing impairment prevented her from performing any basic work activities or whether plaintiff had any functional limitations relating to her hearing impairment. For one thing, it was unclear from the Field Office Report whether plaintiff even was wearing hearing aids at the time of the interview. For another, plaintiff acknowledged at the administrative hearing that, throughout the year 2014, which was after the Field Office interview, she had been gainfully employed at a diner as a waitress and cashier. (*See* AR 56; *see also* AR 374, 381.) Accordingly, the Court concurs with the Commissioner that reversal is not warranted based on the alleged violation of SSR 16-3p.

As for plaintiff's other contentions of error relating to her hearing impairment, the Court finds that the Commissioner's reliance on *Hoopai* and *Bray* is misplaced. *Hoopai* is inapposite. The issue there was whether satisfaction of the step-two threshold requirement that a claimant prove her limitations are severe was dispositive of the step-five determination of whether the non-exertional limitations were sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert. *See Hoopai*, 499 F.3d. at 1076. *Bray* is distinguishable. There, the claimant was

contending that, after the ALJ found that her adjustment disorder was a severe impairment at step two, the ALJ had failed to account for that mental impairment in his final construction of her RFC. The Ninth Circuit did observe that Bray had "offer[ed] no authority to support the proposition that a severe mental impairment must correspond to limitations on a claimant's ability to perform basic work activities." *See Bray*, 554 F.3d at 1228-29. However, unlike here, the ALJ's RFC determination in *Bray* did include a functional limitation relating to the severe impairment in question. Moreover, the medical evidence of record in *Bray* included a medical opinion that the Ninth Circuit found supported the ALJ's conclusions that Bray's mental impairments prevented her from completing only the most complex tasks. *See id.* at 1229.

Here, the medical evidence of record before the ALJ did not include an opinion from any treating or examining physician regarding whether plaintiff had any work-related limitations due to her hearing loss. Moreover, the Court concurs with plaintiff that the ALJ could not properly rely upon the testimony of the ME regarding the severity of plaintiff's hearing impairment, since the ME acknowledged that he could not interpret the audiograms of record. The Court also notes that, contrary to the Commissioner's characterization, the ALJ did not state that plaintiff's hearing loss was noted to be "mild" at her most recent examination. Rather, he stated that plaintiff "was assessed as having mild to profound bilateral sensorineural hearing loss, relatively symmetric with bilateral intermittent tinnitus." (*See* AR 25, citing AR 918.) Also contrary to the Commissioner's characterization, the ALJ did not mention plaintiff's mental-status examinations in his discussion of plaintiff's hearing loss. (*See* AR 25.) Although plaintiff did respond in the affirmative at the administrative hearing, when the ALJ asked if her hearing aids seemed to be working pretty well for her (*see* AR 63), plaintiff also claimed twice that she was having some trouble hearing what was being said (*see* AR 52, 67). And, finally, the fact that the record evidenced limited treatment for hearing with no further treatment recommended by her medical providers begs the question of whether plaintiff had any work-related limitations due to her hearing loss.

In the Court's view, this is another instance of the ALJ failing in his duty to fully and fairly develop the record, with the result that ALJ's RFC determination cannot be found to be supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g.*, *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. *See, e.g.*, *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

The Court is mindful of Ninth Circuit authority for the proposition that, where an ALJ failed to properly consider either subjective symptom testimony or medical opinion evidence, it is sometimes appropriate to credit the evidence as true and remand the case for calculation and award of benefits. *See, e.g., Garrison v. Colvin*, 759 F.3d 995, 1019-21 (9th Cir. 2014). However, in *Ghanim v. Colvin,* 763 F.3d 1154, 1167 (9th Cir. 2014), a case decided after *Garrison*, another Ninth Circuit panel did not apply or even acknowledge the "credit as true" rule where substantial evidence did not support an ALJ's rejection of treating medical opinions and his adverse credibility determination; instead, the panel simply remanded the case for further administrative proceedings. And, in *Marsh v. Colvin*, 792 F.2d 1170, 1173 (9th Cir. 2015), the panel did not apply or even acknowledge the "credit as true" rule where the ALJ had failed to even mention a treating

3:19-cv-00651-JLS-RNB

source's opinion that the claimant was "pretty much nonfunctional"; instead, the panel simply remanded the case to afford the ALJ the opportunity to comment on the doctor's opinions.

Here, even though none of plaintiff's claims of error is directed to the ALJ's adverse credibility determination, plaintiff conclusorily asserts that the Court "should credit the limitations alleged by [plaintiff] as true and award the benefits sought." (*See* ECF No. 15 at 13.) In response, the Commissioner has argued that the proper remedy in the event of reversal is a remand for further administrative proceedings. (*See* ECF No. 16-1 at 14-15.) The Court deems plaintiff's failure to adequately brief the issue of the appropriate remedy and failure to even reply to the Commissioner's legal argument in this regard as a concession to the correctness of the Commissioner's position.

For the foregoing reasons, this Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED,** and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See id.*

IT IS SO ORDERED.


Dated: January 21, 2020

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE